**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| ROCKSTAR, INC., | ) | Case No.: 09-cv-1499 |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| ORIGINAL GOOD BRAND CORPORATION, | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Before the Court is Counterdefendant Rockstar, Inc.'s motion to dismiss (# 21) the first, second, third, and fourth counterclaims filed by Defendant and Counterclaimant Original Good Brand Corporation. Original Good Brand Corporation opposes the motion and filed a response in opposition (# 22). Rockstar filed a reply (# 23).

Based on the following arguments, the Court GRANTS Rockstar's motion to dismiss (# 21).

**BACKGROUND**

This case involves the failed business relationship between Plaintiff and Counterdefendant Rockstar, Inc. ("Rockstar") and Defendant and Counterclaimant Original Good Brand Corporation ("OGB"). In early 2007, Rockstar commenced negotiations regarding the possibility of OGB becoming Rockstar's distributer in Japan. (Amended Answer and Counterclaim ["AAC"] ¶ 8, # 16). On September 22, 2007, the parties entered in an Agent Services Agreement ("ASA"), which provided that OGB would distribute Rockstar's products in Japan. In August 2009, Rockstar terminated OGB as its distributor.

On August 8, 2009, Rockstar filed suit against OGB claiming breach of the ASA, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, and unfair

competition.  (Complaint, # 1).  In response, OGB filed a counterclaim alleging breach of contract, unjust enrichment, and restitution on January 26, 2010.  (AAC, # 16).  Rockstar then brought the instant motion, seeking dismissal of OGB's counterclaims.

### DISCUSSION

**A.     12(b)(6) Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964 (2007).  However, facts must be sufficient to edge a complaint from the conceivable to the plausible in order to state a claim.  *Id.*  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The Supreme Court recently clarified that, in order to avoid a motion to dismiss, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, ---- U.S. ----, 129 S.Ct. 1937, 1949 (2009).  The Court in *Ashcroft* further stated "[w]here a complaint pleads facts

that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*  Therefore, merely making an allegation is not enough to survive a motion to dismiss; facts that a particular defendant may plausibly be liable for the alleged conduct must be pled.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**B.     Analysis**

    **1.     The Court's Consideration of the ASA**

The first matter that must be addressed is OGB's general objection to Rockstar's reliance on the ASA.  Pursuant to Federal Rule of Civil Procedure 12(f), OGB seeks to strike the ASA and the affidavit attached to Rockstar's motion as extrinsic evidence.  (Response at 6:3–6, # 22). This argument is without merit.  To the extent that it has any merit, it is appropriate for the Court to convert the motion to dismiss to a motion for summary judgment as the ASA, the authenticity of which is undisputed, is dispositive of at least some of the claims in this suit.

As noted by Rockstar, it is well-settled that "documents whose contents are alleged in a complaint [or counterclaim] and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). This is applicable even when the contents of a document are not explicitly alleged in the complaint, but depend on that content. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Considering the ASA in light of its incorporation into OGB's counterclaims, the ASA cannot be considered extrinsic to the pleadings.

OGB's argument that the ASA "does not form the basis for each of OGB's counterclaims" fails in its entirety. OGB primarily attempts to parse its counterclaim complaint, alleging that if each counterclaim does not cite directly to the ASA, the ASA should not be allowed to challenge those counterclaims. This argument fails in that each counterclaim incorporates the previous allegations. OGB cites to the ASA in eleven different paragraphs throughout the counterclaim. (AAC ¶¶ 3, 9, 13–16, 18, 20–23, # 16). Moreover, the cases addressing incorporation by reference do not dice up a complaint into individual paragraphs which incorporate or do not incorporate a reference, but rather address the pleading as a whole. It is undisputed that OGB references the ASA in its counterclaim—it is therefore appropriate for the Court to consider the ASA in a motion to dismiss.

### 2. OGB's First Cause of Action

OGB's first cause of action is breach of contract, based on the ASA. Fatal to this claim are the terms of the ASA itself. Rather than address the terms of the contract, OGB states that what this claims is really about is simply that "Rockstar owes OGB money." (Opp. at 6:9–10, # 22). OGB claims that it has made out a prima facie case for breach of contract, but addresses none of the substance of that claim. OGB's first cause of action alleges that Rockstar improperly "required OGB to remit the proceeds of sales in Japan to Rockstar without permitting OGB to

retain the Agent Commission" and has thereby breached Section 5.1 of the ASA. (AAC ¶¶ 12–15). Section 5.1 provides the following:

> Rockstar shall pay the Agent a commission of ten percent (10%) of the sales of the Beverages in the Territory overseen by Agent during the Term of distributors for which Agent arranges to distribute Beverages. The commission shall be based upon ten percent of the gross sales of the Beverages actually received by Rockstar (as forwarded from Agent to Rockstar) less trade discounts, taxes and tariffs ("Net Revenue"), and any amounts Agent owes to Rockstar (the "Agent Commission"). For purposes of clarification, the Agent Commission shall be paid to the Agent in accordance with clause 8.2.

(Appel Decl. Ex. A. § 5.1, # 21 Ex. A). Clause 8.2 provides:

> Payments due to Rockstar hereunder shall be made in Japanese currency (yen) via wire to Rockstar's bank account which Rockstar shall specify by written notice to the Agent. In the event that any distributors are delinquent in timely payment, Agent agrees to work with Rockstar to bring the account current and to take any collection effort against the distributor as necessary on Rockstar's behalf, at Rockstar's discretion.

(*Id.* § 8.2). OGB claims that under these clauses, it was entitled to retain its commission from proceeds under the contract.

OGB's interpretation of the contract is untenable and thus appropriate for dismissal. The ASA is determinative of this claim. "[W]hen a contract is clear, unambiguous, and complete, its terms must be given their plain meaning and the contract must be enforced as written . . . ." *Ringle v. Bruton*, 120 Nev. 82, 93, 86 P.3d 1032, 1039 (2004). The terms of payment are expressly identified in the contract and convey that Rockstar would pay OGB, not that OGB had a right to retain proceeds as payment. OGB identifies nothing in the ASA which provides a basis for a breach of contract claim. Therefore, as the claim is not legally viable, dismissal is appropriate.

### 3. OGB's Second Cause of Action

OGB's second cause of action is also breach of contract, based on an alleged oral contract between the parties. OGB alleges that prior to the ASA, there were the following oral agreements: (1) that Rockstar would reimburse OGB for marketing and related

1  commercialization costs; (2) that OGB would be permitted to retain an additional ten percent
2  (10%) of sales proceeds as Promotional Funds, in addition to the ten percent (10%) for the Agent
3  Commission, in order to cover all or a portion of the marketing expenses; (3) that Rockstar
4  consented and agreed to reimburse OGB for specific promotional events; and (4) that Rockstar
5  would reimburse OGB for the overhead costs associated with the distributorship, including but
6  not limited to, the expenses for transportation and delivery, warehousing and storage, and
7  creation and maintenance of the Rockstar Japan webpage.  (AAC ¶¶ 18–20, # 16).  The crux of
8  Rockstar's request for dismissal turns on the simple matter that OGB's counterclaims are
9  contrary to the ASA, as a fully integrated document.
10       Rockstar's argument that the ASA is fully integrated is both correct and dispositive of
11  OGB's second cause of action.  The ASA states: "This Agreement constitutes the entire
12  agreement between the parties with reference to the subject matter of the Agreement and
13  supersedes all prior negotiations, understandings, representations and agreements, if any."
14  (Appel Decl. Ex. A at ¶ 19.1, # 21 Ex. A).  OGB's arguments that there are questions "regarding
15  factual issues, such as what constitutes the 'subject matter' of the Agreement are not properly the
16  subject of a motion for summary judgment" is unpersuasive.  While OGB is correct that the mere
17  insertion of an integration clause into a contract is not automatically dispositive of whether or not
18  the integration clause covers an additional allegation of breach of contract, it does appear to be
19  so in this case.  *See Truck Ins. Exch. v. Whitaker*, 71 Nev. 1, 278 P.2d 277 (1955) (affirming that
20  a written contract with an integration clause involved a different subject matter).
21       The subject matter of the ASA and the integration clause is not ambiguous.  The first
22  page of the ASA, Recitals C and D clearly lay out the scope of the ASA:

   C.   Rockstar desires to engage the Agent to manage the distribution of the
        Beverages in Japan, excluding military bases/installations ("Territory");
        and
   D.   Rockstar and Agent desire to enter into the written agreement to provide a
        full statement of their respective rights, duties, obligations and
        responsibilities during the term of this agreement.

(Appel Decl. Ex. A, Recitals C & D, # 21 Ex. A). OGB's claim that this is ambiguous does not make it so. It is difficult to see how the agreement could be any more broad—it governs OGB's role as the distributor for Rockstar. The integration clause itself makes clear the intent of the parties that the ASA "constitutes the *entire* agreement . . . and supersedes *all* prior negotiations, understandings, representations and agreements, if any." (*Id.* ¶ 19.1) (emphasis added). The cases cited by OGB does little to persuade the Court otherwise. *Truck Ins. Exch. v. Whitaker*, 71 Nev. at 11, involved oral agreements after the formation of a written contract and it was undisputed that there was not a single, complete integration. Likewise, in *Sierra Diesel Injection Serv. v. Burroughs Corp.*, 651 F. Supp. 1371 (D. Nev. 1987), the court determined that the evidence of the defendant's attempts to comply with the warranties made prior to the agreement suggested that the parties did not intend for the agreement to be fully integrated. Both of these cases are distinguishable in that OGB is trying to enforce oral contracts made prior to the ASA and that the integration clause and ASA provide overwhelming evidence on the face of the contract that the ASA was fully integrated. Accordingly, the Court concludes that the ASA was fully integrated as a matter of law and applies to the subject matter claimed in OGB's counterclaim. Accordingly, OGB's a counterclaim fails to state a claim for relief and are dismissed.

### 4. OGB's Third Cause of Action

OGB's third cause of action, unjust enrichment, is pleaded in the alternative. (Response at 9:26–27, # 22). OGB claims that if the contract claim fails, OGB should receive compensation in equity for its provision of promotional services. Rockstar's primary argument against this claim is that "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *LeasePartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975* 113 Nev. 747, 755, 942 P.2d 182 (1997). The "doctrine of unjust enrichment or recovery in quasi

contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another." *Id.* at 756 (quoting 66 Am. Jur. 2d *Restitution* § 6 (1973)).

OGB suggests that the above bar is not always applicable, citing to various cases for this proposition. For instance, OGB cites to *LeasePartners Corp.* as an example that "courts often entertain unjust enrichment claims, though a written contract exists between the parties." (Opp. at 10:9–11, # 22). But contrary to OGB's claim, the court in *LeasePartners Corp.* found that "no written contract existed between LeasePartners and Brooks Trust." *LeasePartners Corp.*, 113 Nev. at 756. OGB also discusses in great depth *Crocket & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184 (D. Nev. 2006); *Crocket & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 583 F.3d 1232 (9th Cir. 2009). OGB, quite incorrectly, claims that "both the district and appellate courts in [*Crockett*] agreed that the defendant was entitled to compensation based on a theory of unjust enrichment." (Opp. at 13:3–5, # 22). On the contrary, the district court stated, "[b]ecause unjust enrichment does not apply where there is an express, written contract, Fitzgerald cannot state a claim for unjust enrichment in this case." *Crocket*, 440 F. Supp. 2d at 1197. The circuit court did not directly address the unjust enrichment claim. The district court granted damages based on the theory of quantum meruit, something addressed by the circuit court, *Crocket*, 583 F.3d at 1238–39, but this is inapplicable to the instant case as there is no claim for quantum meruit before this Court. The law of Nevada is clear—where there is an express written agreement, a party may not assert a claim for unjust enrichment.

**5.    OGB's Fourth Cause of Action**

OGB's fourth cause of action is for restitution. OGB specifically seeks restitution for transfer of goodwill following the dissolution of the relationship as Rockstar's distributor in Japan. OGB's claim references a Guaranty Letter, under which OGB guaranteed production of

100,000 cases of Rockstar Energy Drink, which was necessary to obtain contracts in Japan. OGB claims that Rockstar reaped the benefits of the Guaranty letter and the subsequent transfer to Morrison Coors as distributor upon termination of the ASA, without OGB receiving any just compensation. Again, Rockstar claims that the ASA contemplates these actions and therefore restitution is not proper.

The ASA outlines the rights and obligations of both parties both before and after termination of OGB as distributor. Section 12.3 explicitly permits Rockstar to terminate the agreement with ninety days notice "without penalty." (Appel Decl. Ex. A § 12.3, # 21). As already noted, the scope of this agreement is clear. Restitution is not available where parties "define their relationship with express contracts." *United States use of Youngstown Welding & Engineering Co. v. Travelers Indem. Co.*, 802 F.2d 1164, 1169 (9th Cir. 1986) . Further, "an action does not lie on an implied contract where there exists between the parties an express contract covering the same subject matter." *Ewing v. Sargent*, 87 Nev. 74, 80 (1971). While dismissal of this cause of action is not as clear cut as the previous three, Rockstar again appears to be correct in its request for dismissal. There simply appear to be no grounds on which OGB may claim restitution.

## CONCLUSION

The Court has considered the arguments and pleadings of the parties.

IT IS HEREBY ORDERED THAT Plaintiff Rockstar, Inc.'s Motion to Dismiss (# 21) is GRANTED.

DATED this 9th day of August, 2010.

_____
Gloria M. Navarro
United States District Judge